# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 14-CR-0110-CVE |
| JESUS JONATHAN CAMPOS-BRETADO, | ) ) ) |
| Defendant. | ) |

## OPINION AND ORDER

Before the Court is the motion to reconsider, Dkt. # 35, filed by plaintiff, and defendant's response, Dkt. # 36. Plaintiff requests that the Court reconsider its decision, Dkt. # 31, to grant defendant's motion to suppress evidence, Dkt. # 18. The Court granted the motion to suppress evidence on the ground that, under the totality of the circumstances, defendant's statements of consent to search his home were involuntary under the Fourth Amendment. Plaintiff requests reconsideration only of the voluntariness of defendant's alleged first statement of consent to search his home.

### I.

The following facts, taken from the Court's opinion and order, Dkt. # 31, are relevant to the voluntariness of defendant's alleged first statement of consent. On April 15, 2014, Tulsa Police Department (TPD) Officer Chad Moyer received a tip that a green, 1993 Toyota pickup truck would be transporting narcotics from Oklahoma City to Tulsa later that day. Officer Moyer asked several other officers, including TPD Officer Brian Comfort, to watch for the vehicle at a point between Oklahoma City and Tulsa. The officers saw a truck matching the description in the tip and followed it into Tulsa, observing on the way that defendant, who was driving the truck, was not wearing his

seat belt. Once in Tulsa, Officer Moyer asked a passing Oklahoma Highway Patrol (OHP) officer, Trooper Weilert, to stop the vehicle. Trooper Weilert did so, and defendant stopped in a striped v-shaped strip between an exit ramp and the highway. Trooper Weilert determined that defendant had not been wearing his seatbelt, and he found that defendant did not have a valid Oklahoma driver's license.

As Trooper Weilert was walking back to his car to prepare citations, TPD Officer Jason Roy, a uniformed officer, arrived and asked defendant to step out of the vehicle. After the two moved behind the trooper's vehicle, a canine unit arrived and conducted an open air sniff of the vehicle. The dog alerted to the presence of narcotics. Trooper Weilert finished writing defendant's citations and gave them to defendant. He then told defendant that defendant would need to call someone to pick him up and "to stay around until these officers were done with him." After delivering that message, Trooper Weilert left the scene. At some point, defendant and his vehicle were moved from the striped v-shaped area to the other side of the exit ramp; the vehicle's keys were not returned to defendant. Officer Moyer arrived next, approximately twenty minutes after the stop began. The canine officer informed Officer Moyer of the dog's alert; Officer Moyer approached defendant, still standing with Officer Roy, and told him that they were going to search the vehicle.

At this point, the testimony of three of the officers diverges.[1] Officer Moyer testified that, during that first conversation, he asked defendant, "Is there anything we need to know about in the vehicle?" Dkt. # 34, at 16. After defendant denied, Officer Moyer asked if there was anything at

---

[1] Only the portion of the transcript containing Officer Moyer's testimony was requested and filed as of this date. However, the Court cannot consider his testimony in a vacuum; Officer Moyer's testimony must be considered in light of the testimony of the other witnesses at the hearing.

2

defendant's home that the officers should know about; defendant again denied. Officer Moyer then testified that he asked, "Would you have a problem later, if we need to, to go to your house and search?" Id. He was certain this conversation took place almost immediately after he arrived, approximately twenty-five minutes after the stop began and before Officer Comfort arrived. He then returned to the search of the vehicle. After Officer Comfort arrived, Officer Moyer would periodically move to the group comprised of defendant, Officer Comfort, and Officer Roy and then return to the vehicle search. Id. at 17-18. Officer Moyer testified that, approximately ninety minutes after the stop began, he approached and asked again if there was anything the officers should know about in defendant's vehicle or home. Id. at 22. Following defendant's denials, he asked for consent to search the home, and defendant gave his consent. Id. It was shortly after that conversation that defendant told Officer Comfort that what they wanted was in defendant's home, resulting in the Miranda warning and signing of the search waiver form. Id. at 23.

Officer Roy testified that Officer Moyer did approach defendant soon after arriving. However, his recollection was that the initial conversation between Officer Moyer and defendant related to the search of the vehicle. He did not recall Officer Moyer specifically asking for and receiving consent to search defendant's home at that time. Officer Comfort arrived after that initial conversation and began speaking with defendant. Officer Comfort repeatedly told defendant that the officers would find drugs in the vehicle and that now was the time to cooperate. After Officer Comfort had arrived and the search had been ongoing for some time, Officer Moyer again approached. He asked defendant if there was anything in the vehicle or at defendant's home, and defendant denied both. Officer Roy recalled that, at that point, Officer Moyer asked for defendant's

3

consent to search the home, and defendant gave that consent.[2] Defendant then began acting nervously, and, after some additional conversation with Officer Comfort, defendant told Officer Comfort that what the officers were searching for was at his home. Officer Comfort then gave a Miranda warning, and Officer Moyer secured a signed search waiver form for defendant's home.

Officer Comfort testified that he arrived approximately thirty minutes after defendant was stopped. He approached defendant, who was standing with Officer Roy. The search of the vehicle had already begun. He told defendant about the drug dog's alert and related his belief that there were drugs in the vehicle. He said that the officers would find the drugs, and that defendant should cooperate while there was still time. Defendant denied having drugs, even when Officer Comfort asked if there was anything in the vehicle. After a period of only sporadic conversation, Officer Moyer approached the group and asked if there was anything at defendant's home. After defendant's denial, Officer Moyer asked permission to search the defendant's home, and defendant gave it. Following this conversation and Officer Moyer's return to the search, defendant began acting more nervously. After more questioning from Officer Comfort, defendant divulged that what the officers were searching for was at defendant's home. Officer Comfort then read defendant a Miranda warning and secured a waiver of rights, followed by Officer Moyer securing a signed search waiver form for the home.

During the search of defendant's home, officers discovered 877.76 grams (approximately 1.94 pounds) of methamphetamine, as well as $26,114 in cash, drug scales, and two notebooks

---

[2] On cross-examination, Officer Roy seemed uncertain as to when exactly Officer Moyer first asked for consent; his testimony on the issue was ambiguous. However, he seemed more certain that, when Officer Moyer asked for consent to search defendant's home, the search of the vehicle had already begun and Officer Comfort was present.

containing drug notations. No evidence was uncovered during the search of the vehicle. On July 9, 2014, a grand jury returned an indictment charging defendant with possession of methamphetamine with intent to distribute and forfeiture. Dkt. # 4.

## II.

Without a warrant or valid exception, evidence gathered from a search of a home offends the Fourth Amendment and cannot be used at trial. Wong Sun v. United States, 371 U.S. 471, 484 (1963); Mapp v. Ohio, 367 U.S. 643, 655 (1961). The government bears the burden of proving any exception to the warrant requirement, United States v. Maestas, 2 F.3d 1485, 1491 (10th Cir. 1993), and it must prove that any consent was "freely and voluntarily given." United States v. Sandoval, 29 F.3d 537, 539 (10th Cir. 1994). Any ambiguity in the testimony will be resolved against the government.

## III.

In its previous opinion and order, Dkt. # 31, this Court found that the evidence from defendant's home should be suppressed, as the officers did not secure a warrant and all of defendant's statements of consent were involuntary under the Fourth Amendment. Id. at 18-23. Plaintiff argues that, under the totality of the circumstances and bearing in mind the factors that the Court must consider in determining voluntariness, defendant's alleged first statement of consent was voluntary. Dkt. # 35, at 1. Defendant allegedly provided the officers with consent as many as three times during the interchange: if Officer Moyer's testimony is believed, once verbally at the commencement of the vehicle search; once verbally ninety minutes into the stop, as testified to by all three officers; and once in writing at the same time as the Miranda warning when defendant signed a search waiver form for the home, as testified to by all three officers.

5

As discussed above, there is conflicting testimony about exactly how many times defendant gave verbal consent to a search of his home. Officer Moyer testified that he asked twice, while Officer Roy testified that Officer Moyer asked only once. The Court finds that, more likely than not, Officer Moyer asked for verbal consent to search defendant's home only once, just prior to the Miranda warning, rather than twice. This is not to say that the Court finds Officer Moyer not credible, only mistaken; the Court finds that all three of the officers are credible. The reasoning for the Court's finding is two-fold. First, as defendant notes, Officer Moyer would have had no reason to ask for defendant's verbal consent a second time if he had secured that consent at the time that the vehicle search began. See Dkt. # 36, at 2. Second, Officer Roy's account of the events makes more sense. At the initial stop, all of the officers were certain that the vehicle would contain drugs; that, after all, was what the tipster told them. Officer Moyer would not have had a reason to ask for consent to search defendant's home at that point. Only after the vehicle search had proved fruitless would the officers have had a need to search the home, and it was at that point, some ninety minutes after the initial stop, that Officer Moyer's alleged second request for consent occurred. In addition, Officer Roy's testimony as to the alleged second request was corroborated by both Officer Comfort and Officer Moyer; Officer Moyer's testimony as to the alleged first request was not corroborated by any other witness.

Fundamentally, the burden of proof for consent is on the government, United States v. Maestas, 2 F.3d 1485, 1491 (10th Cir. 1993), and, as noted above, any ambiguity in the testimony will be resolved against the government. The Court finds the witnesses' testimony as to the existence of an alleged first consent ambiguous. The Court finds it more likely that the first consent about which Officer Moyer testified was a mistaken memory of the later request for verbal consent. The

6

Court finds it more probable that the first conversation between defendant and Officer Moyer concerned the search of the vehicle only, with no discussion of defendant's home. Thus, the Court concludes that the evidence shows that defendant made two statements of consent: the first, a verbal consent given approximately ninety minutes after the stop began; and the second, a signed consent given a few minutes after the first and directly after defendant signed the Miranda waiver form.

Having found that there were only two statements of consent, the Court's earlier findings and conclusions regarding the voluntariness of those two statements remain unchanged. See Dkt. # 31, at 18-23.

**CONCLUSION**

In the earlier opinion and order, the Court assumed without making a specific finding that there were three statements of consents, two verbal and one written, and conducted its voluntariness analysis accordingly. Based on the government's motion to reconsider, the Court has reconsidered its earlier opinion and order as to how many verbal consents to search defendant's home were given. Therefore, the earlier opinion and order, Dkt. # 31, is modified only to the extent reconsidered herein, viz., that there was one verbal consent to search the home in addition to the written consent. The Court's conclusion that both were involuntary remains unchanged. Thus, the earlier opinion and order is readopted, as modified herein.

**IT IS THEREFORE ORDERED** that plaintiff's motion to reconsider, Dkt. # 35, is **granted**, however, the motion to suppress evidence, Dkt. # 18, remains **granted**.

**DATED** this 15th day of September, 2014.

_____
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE